William JORDAN

v.

UNITED STATES DEPARTMENT OF JUSTICE.

Civ. A. No. 76–276.

United States District Court, District of Columbia.

Feb. 26, 1981.

See also, C.A.D.C., 591 F.2d 753.

Richard Lowe, Elizabeth Symonds, Washington, D. C., for plaintiffs.

Royce C. Lamberth, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court is Plaintiff's Motion for Attorneys' Fees in this case arising under the Freedom of Information Act (FOIA). 5 U.S.C. § 552 (1976). While it appears that Plaintiff "substantially prevailed" in this action and the Court is authorized to assess against the United States reasonable attorneys fees and other litigation costs reasonably incurred by Plaintiff, *Id.* § 552(a)(4)(E), the enormously excessive and unreasonable demand for attorneys' fees in this case impels the Court, in the discretion granted it by the FOIA attorneys' fees provision, to deny altogether Plaintiff's demand.

The facts of this case may be summarized as follows: Plaintiff is William Jordan who was a third year law student at the Georgetown University Law Center, engaged in research for a law review article in criminal justice. On November 15, 1975, Jordan requested from the United States Attorney for the District of Columbia the charging manuals, rules and guidelines which set forth criteria for prosecutorial discretion, including eligibility criteria for rehabilitation and diversion programs as alternatives to criminal prosecution. Jordan's request was denied by the Department of Justice and on February 19, 1976, Jordan initiated this lawsuit.

On March 15, 1976, Plaintiff moved for partial summary judgment with respect to the Papering and Screening Manual for the D.C. Superior Court Division of the United States Attorney's Office, and Guidelines for First Offender Treatment, alleging that Defendant's failure to disclose the documents violated the Freedom of Information Act. On April 30, 1976, prior to a decision on the summary judgment motion, the Papering and Screening Manual was released in its entirety, with the exception of ten paragraphs. The Department then moved to dismiss this action and moved for partial summary judgment as to the First Offender Guidelines and the nondisclosed ten paragraphs of the Screening Manual. The Department relied on Exemptions 2 and 5 of FOIA to justify nondisclosure. 5 U.S.C. § 552(b)(2) & (5) (1976). Plaintiff opposed Defendant's cross motion.

After oral argument on January 13, 1977, the Court entered an Order dismissing private attorney Gearldine Gennet as a plain-

tiff, granting Plaintiff Jordan's Motion for Partial Summary Judgment, denying Defendant's Cross-Motion for Summary Judgment, and holding in abeyance Plaintiff's request for attorney's fees pending the disposition of any appeal or further Order of the Court.

On January 18, 1977, Defendant moved for a stay of sixty (60) days, which was opposed by Plaintiff. On January 25, 1977, the motion for a stay was granted until February 1, 1977, to permit Defendant an opportunity to appeal, and it was Ordered that if Defendant did appeal, the Court's Order to release the documents would not take effect until disposition of the appeal. On January 26, 1977, Defendant appealed; Plaintiff Gennet did not cross appeal. On April 5, 1977, the Department moved the Court of Appeals for an extension of time, until May 18, 1977, to file its appellate brief. Over Plaintiff's objection, the motion was granted, allowing Defendant until May 18, 1977 to file its brief. Oral argument, originally scheduled for September 21, 1977, was rescheduled en banc for March 7, 1978. Oral argument was later rescheduled en banc for April 6, 1978.

On October 31, 1978, the Court of Appeals issued its Opinion, together with concurring Opinions of Judges Bazelon and Levanthal, and a dissenting Opinion by Judge MacKinnon. The majority held that the sought-after documents were not releasable under 5 U.S.C. § 552(a)(2), as Plaintiff had alleged, but, rather, were disclosable under Section 552(a)(3). The Court rejected Defendant's argument that exemptions 2, 5 or 7 (raised for the first time on appeal) were applicable.

█ The Department suggests that this case is not ripe for consideration of the attorney's fees question as the litigation has "apparently not ended." The Department points out that this Court's Order, affirmed by the Court of Appeals, was for partial summary judgment. The FOIA attorneys fees provision contemplates concluded litigation before any award of fees. 5 U.S.C. § 552(a)(4)(E). Plaintiff has filed a Motion to Dismiss Without Prejudice the remaining claims in an effort to conclude the litigation and present a ripe claim for attorneys' fees. To allow Plaintiff to present a case for attorneys' fees, reinstitute and prosecute the claims dismissed without prejudice to a potentially favorable conclusion and again seek fees would be a procedural end run around the finality requirement for FOIA attorneys fees. Plaintiff failed to prosecute this litigation for a period of almost two years following the Court of Appeals decision. Therefore, Plaintiff's remaining claims are dismissed with prejudice. Fed.R. Civ.P. 41(b).

It is clear that Plaintiff "substantially prevailed" within the meaning of 5 U.S.C. § 552(a)(4)(E), the attorneys fees provision. As a preliminary matter, four factors should be considered when deciding a motion for attorneys fees in a FOIA case: (1) whether the public interest is served by disclosure; (2) whether a commercial interest is served by disclosure; (3) the nature of complainant's interest in the records sought; and (4) the reasonableness of the Government's asserted legal basis for withholding the documents. *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C.Cir.1977). Upon evaluation of the four factors as applied to this case, it appears to the Court that Plaintiff has satisfied the *Nationwide* litmus test for an award of fees.

█ This Court has great discretion in evaluating the four factors yet it must make clear its consideration of those factors, *LaSalle Extension University v. Federal Trade Commission*, 627 F.2d 481 (D.C.Cir. 1980). No one factor is dispositive and application of the factors should not be mechanistic; they are intended to provide guidance and direction. *Id.*, at p. 484 n.5. Each factor has been considered in this case.

*The Public Interest is Served by Disclosure*

Plaintiff argues that the release of documents relating to the exercise of prosecutorial discretion by the United States Attorney for the District of Columbia, and their use in scholarly research, provided the public with important information about the administration of criminal justice in the District of Columbia. The Department

counters by pointing out that Mrs. Gennet, who was initially a co-plaintiff, is a practicing criminal attorney for whom release furthered a commercial interest—her law practice—not the public interest.

In its Opinion in this case, the Court of Appeals recognized the public interest would be served by the release of the documents involved, *Jordan v. United States Department of Justice*, 591 F.2d 753, 781 (D.C.Cir.1978) (Bazelon, J., concurring); *Id.* at 784 (Levanthal, J., concurring). This Court notes that the public interest is served when, as here, the Plaintiff has a "scholarly or journalistic or public-interest oriented" concern. *Nationwide*, 559 F.2d at 712, *citing* S.Rep.No.93–854, 93d Cong., 2d Sess. (1975). Considering the nature of the documents involved and the nature of their use upon release, the public interest is served by release.

### No Substantial Commercial Interest is Furthered

The Government argues that a commercial interest was served by disclosure and again points out that one of the co-plaintiffs, subsequently dismissed from the action, was a practicing criminal attorney who sought the documents to further her private practice. The potential commercial interest of that one attorney is far outweighed by the public interest served by release. The commercial interest here is slight and is not the type the Congress was concerned with when addressing FOIA attorneys fees; Plaintiffs were not, for example, representatives of a large corporate interest. *See Nationwide*, 559 F.2d at 712.

### The Nature of Complainant's Interest is Worthwhile

As has been pointed out, the principal purpose served by release of the documents was the dissemination of the documents to the public in a scholarly article. Such a scholarly interest augers for attorneys' fees. *Id.*

### The Government was Unreasonable in its Asserted Basis for Withholding

The Government originally relied only on exemptions 2 and 5 to justify its non-disclo-sure of the sought-after information. The Exemption 2 position was declared to be meritless by the Court of Appeals. 591 F.2d at 763. The Exemption 5 argument was dropped on appeal. *Id.* at 772. The Government attempted to use Exemption 7 for the first time on appeal, which was disallowed. The Government's last argument relied on the restriction imposed on disclosure under 5 U.S.C. § 552(a)(2) in this case involving a distinct disclosure provision, 5 U.S.C. § 552(a)(3). The Court of Appeals declared that argument to be "untenable in view of the fundamental structure of the Act." 591 F.2d at 761. The Government's asserted legal basis for withholding information in this case was unreasonable.

In sum, the *Nationwide* criteria allow an award in this case; thus the Court may exercise its discretion in determining whether to award attorneys fees.

Plaintiff is seeking over Seventeen Thousand Dollars ($17,000) in attorneys fees and Thirteen Dollars ($13) in costs. The hourly rate sought are One Hundred Twenty-Five Dollars ($125) for the most senior attorney, Kramer, Fifty Dollars ($50) for another attorney, Lowe, Forty Dollars ($40) an hour for post graduate fellows (some of whom were not licensed), and Fifteen Dollars ($15) for so-called "law clerks" who were actually law students getting litigation experience through work on this case. Plaintiff is seeking compensation for approximately 380 hours of attorney and law student work. While the four *Nationwide* factors allow an award to be made in this case, the Court, in its discretion, refuses to make an award on account of Plaintiff's shoddy documentation as to hours worked, the unsubstantiated claim for an hourly fee of One Hundred Twenty-Five Dollars ($125) for Mr. Kramer and the unprecedented and unsupportable claim for attorneys' fees for the work done by uncompensated law students.

The District of Columbia Circuit recently explained that "[a]ny fee-setting inquire be-

gins with the 'lodestar': the number of hours reasonably expended multiplied by a reasonably hourly rate." *Copeland v. Marshall*, 641 F.2d 880 Civil No. 77–1351 (D.C. Cir. Sept. 2, 1980), at 881. A preliminary issue under the *Copeland* analysis is whether the rate and the number of hours claimed are reasonable. Here they are not.

■ The record-keeping and documentation of hours worked in this case was abysmal; *Copeland* mandates sufficient documentation so that this Court can exercise billing judgment to excise non-productive or duplicative time from the hours claimed for compensation. *Id.* at 892. The breakdown as to the time spent on research of specific issues was woefully inadequate and surely would not suffice in a law firm setting; neither does it suffice here. Since the Court must make any award of fees based on the market value of the legal services rendered, *Id.* at 899, it must be provided with documentation demanded in the marketplace, *i. e.*, by clients from law firms. It was not provided with that documentation.

The One Hundred Twenty-Five Dollar ($125) fee requested for the hours worked by Mr. Kramer is an unprecedented demand. Plaintiff was unable to provide one example where such an hourly fee was awarded a FOIA attorney. And despite Plaintiff's contention to the contrary, the value of legal services ultimately depends on the type of legal services rendered. *Id.* An average rate of Forty Dollars ($40) an hour was typical for awards in FOIA cases in this Circuit during the time period involved in this litigation. *See, e. g., Communist Party v. United States Department of Justice*, No. 75–1770 (D.D.C.1976); *Zeldin v. Hoffman*, No. 75–1913 (D.D.C.1976); *Public Citizen Health Research Group v. Department of Labor*, No. 76–887 (D.D.C.1979). Plaintiff seeks Eighty-Five Dollars ($85) more per hour than the reasonable Forty Dollars ($40) rate used in awards during the principal period of this litigation. For the 50 hours of work allegedly done by Kramer, his demand is excessive to the tune of Four Thousand Two Hundred Fifty Dollars ($4,250).

■ Plaintiff seeks more than Two Thousand Dollars ($2,000) for the work of law clerks, claiming that they are entitled to attorneys' fees. Law Clerks who volunteer their services were not intended to have their work included in an attorneys' fee demand under FOIA. The attorneys' fees provision was enacted to assure that FOIA litigants are not prevented from enforcing the Act's provisions for lack of an attorney—not that law schools obtain a windfall in their clinical program. *See Holly v. Acree*, 72 F.D.R. 115, 116 (D.D.C.1976). While attorneys have received costs for employment of law clerks, *e. g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974); *Barnett v. Pritker*, 73 F.R.D. 439 (S.D.N.Y.1977), there has never been an award of attorneys' fees for law clerks under the FOIA attorneys' fees provision and rightfully so, since law clerks are not attorneys. Indeed, the United States has not waived sovereign immunity for suits seeking law clerk fees. Making the demand for law clerk compensation even more absurd is the fact that the law clerks were free to the Plaintiff in this case.

Plaintiff here seeks Six Thousand Two Hundred Fifty Dollars ($6,250) in attorneys' fees to which it is clearly not entitled ($4,250 in excess fees for Mr. Kramer; $2,000 for uncompensatable law clerks); the documentation as to the remaining approximately Ten Thousand Dollar ($10,000) claim is inadequate; and a demand of more than Seventeen Thousand Dollars ($17,000) for a relatively simple Freedom of Information Act case is irresponsible. It appears to the Court that Plaintiff presented a high demand in hopes of settling for a reasonable sum.

In a similar case, the Seventh Circuit recently declared:

> [D]enial of attorneys fees is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees.

*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980). In affirming the denial of fees in a case, where, as here, law students as-

**542**

sisted on a volunteer basis, and where the claim was intolerably inflated, the Court in *Brown* explained:

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fees to what they should have asked for in the first place. To discourage such greed a severer reaction is needful, and the District Court responded appropriately in the case at bar.

*Id.*

Particularly in a time when our nation is seeking to stem wasteful Government spending, an order in this case requiring the Government to pay an excessive sum in attorneys' fees would be unseemly. The bad faith demonstrated by Plaintiff in his asserted claim demands denial of any award whatsoever. An appropriate Order accompanies this Memorandum Opinion.