William JORDAN, Appellant,

v.

UNITED STATES DEPARTMENT
OF JUSTICE.

No. 81–1380.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1981.

Decided Oct. 5. 1982.

Michael B. Trister, Washington, D. C., with whom Richard A. Lowe, Washington, D. C., was on the brief, for appellant.

Rebecca L. Ross, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBINSON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.

Opinion for the Court filed by Chief Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

This appeal protests an order of the District Court wholly denying appellant's mo-

tion for attorneys' fees claimed as an entitlement of successful Freedom of Information Act (FOIA)[1] litigation.[2] Finding this disposition beyond the pale of sound judicial discretion, we reverse the order and remand the case to the District Court for further proceedings.

I

Appellant, while a student at Georgetown University Law Center, sought from the United States Attorney for the District of Columbia access to all charging manuals, rules and guidelines setting forth standards for the exercise of prosecutorial discretion in criminal matters. The Department of Justice refused this request and appellant, invoking FOIA, sued in the District Court.[3] The Department contended that the material desired was shielded by Exemption 5.[4] After pursuing discovery, appellant moved for partial summary judgment, arguing that the withholding of a papering and screening manual and a set of guidelines for first-offender treatment violated FOIA's disclosure mandate.[5] In response, the Department released all but ten paragraphs of the manual,[6] and subsequently moved, on the basis of Exemptions 2 and 5,[7]

1.  5 U.S.C. § 552 (1976 & Supp. IV 1980).

2.  See *Jordan v. United States Dep't of Justice,* 192 U.S.App.D.C. 144, 591 F.2d 753 (*en banc* 1978).

3.  Complaint (filed Feb. 19, 1976), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.). An attorney practicing criminal law in federal courts in the District of Columbia joined as a plaintiff, but was dismissed for failure to exhaust administrative remedies, see *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C. Jan. 14, 1977) (order and judgment), and that ruling was not appealed.

4.  Answer, First Defense, and Fourth Defense ¶ 10 (filed Mar. 24, 1976), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.). See note 7 *infra.*

5.  Motion for Partial Summary Judgment (filed Mar. 29, 1976), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.). The papering and screening manual specified criteria utilized by assistant United States attorneys in deter-

mining whether nonprosecution or selective prosecution for particular criminal offenses was warranted. See *Jordan v. United States Dep't of Justice, supra* note 2, 192 U.S.App. D.C. at 148, 591 F.2d at 757. The guidelines for first-offender treatment enunciated eligibility standards for three pretrial diversion programs, including first-offender treatment. *Id.* at 148–149, 591 F.2d at 757–758.

6.  See *Jordan v. United States Dep't of Justice, supra* note 2, 192 U.S.App.D.C. at 149, 591 F.2d at 758.

7.  Motion to Dismiss (filed May 13, 1976), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.); Cross-Motion for Partial Summary Judgment (filed May 13, 1976), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.). See 5 U.S.C. § 552(b)(2) (1976) (exempting material related solely to internal agency personnel rules and practices); *id.* § 552(b)(5) (exempting intra-agency memoranda not available by law to a party other than another litigating agency).

alternatively for dismissal or partial summary judgment as to the excised manual paragraphs and the guidelines.

The District Court rejected the Department's Exemptions 2 and 5 defenses,[8] and granted appellant's partial-summary-judgment motion on the ground that release of the contested data was required by FOIA.[9] The Department appealed,[10] and this court, sitting *en banc,* similarly found unacceptable the Department's Exemptions 2 and 5

arguments,[11] and held that the withheld material was subject to mandatory disclosure.[12]

Subsequently, appellant moved for an award of attorneys' fees.[13] The motion sought approximately $17,000 for 420 hours of work, all performed by the legal staff of the Institute for Public Representation at Georgetown University Law Center.[14] The application requested compensation at hourly rates of $125 for the Institute's director,

8. *Jordan v. United States Dep't. of Justice,* No. 76–0276 (D.D.C. Jan. 13, 1977) (memorandum and order).

9. *Id.*

10. Notice of Appeal (filed Jan. 26, 1977), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.). During pendency of the appeal, the Department released two of the ten paragraphs of the papering and screening manual originally withheld. See *Jordan v. United States Dep't of Justice, supra* note 2, 192 U.S. App.D.C. at 150 n.20, 591 F.2d at 759 n.20.

11. *Jordan v. United States Dep't of Justice, supra* note 2, 192 U.S.App.D.C. at 154–170, 591 F.2d at 763–779. In addition, the court dismissed as untimely the Department's claim, raised on appeal, that the withheld material was protected by Exemption 7, 5 U.S.C. § 552(b)(7) (1976). *Jordan v. United States Dep't of Justice, supra* note 2, 192 U.S.App. D.C. at 170, 591 F.2d at 779.

12. *Id.* at 151, 591 F.2d at 760. The statutory predicate of our holding was 5 U.S.C. § 552(a)(3) (1976), requiring disclosure, on demand, of reasonably described agency records not encompassed by § 552(a)(1) or (2). We rejected, however, the contention that sought-after data were subject to release under § 552(a)(2). *Id.* at 150–151, 591 F.2d at 759–760.

13. Motion for Reasonable Attorney's Fees and Litigation Expenses (filed Oct. 28, 1980), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.), Joint Appendix (J.App.) 13.

14. We assume for purposes of this appeal that, should the Institute share in any attorneys' fee award beyond recoupment of its own expenses, it will maintain a fund exclusively for litigation, into which its share will be deposited. In *Anderson v. United States Dep't of Treasury,* 208 U.S.App.D.C. 261, 648 F.2d 1 (1979), *supplemental opinion issued sub nom. National Treasury Employees Union v. United States Dep't of Treasury,* 211 U.S.App.D.C. 259, 656 F.2d 848 (1981), we held that it is improper for an entity

not licensed to practice law to partake in attorneys' fees representing the market value formula, *National Treasury Employees Union v. United States Dep't of Treasury, supra,* 211 U.S.App.D.C. at 260–263, 656 F.2d at 849–852, where its portion is not to be placed in a fund dedicated solely to litigation, see *id.* at 266, 656 F.2d at 855 (discussing possibility that special fund therefor might validate arrangement, but noting that it was not necessary to decision there). A lay entity that does not qualify in this manner is limited to recovery of its own financial outlay in the case, *id.* at 264–266, 656 F.2d at 853–855, for otherwise it would participate in a long-prohibited division of fees with an attorney. *Id.* at 261–263, 656 F.2d at 850–852.

Alternatively, of course, a market-value award can be made directly to the lawyer who served at the instance of the organization. *Id.* at 263–264, 656 F.2d at 852–853. The lawyer might then come under an equitable obligation to reimburse the organization for its expenses, *Wilderness Soc'y v. Morton,* 161 U.S.App.D.C. 446, 457, 495 F.2d 1026, 1037 (en banc 1974), *rev'd on other grounds sub nom. Alyeska Pipeline Servs. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and would be free to donate any part of the fee to the organization—just as he could donate monies obtained from other sources. *National Treasury Employees Union v. United States Dep't of Treasury, supra,* 211 U.S.App.D.C. at 264, 656 F.2d at 853. It would not, however, be appropriate to broaden this option to an award of fees directly to law students for their role in the litigation. See D.C.Cir.R. 20(II)(a)(5) (limiting authorization of student appearances before the court to situations in which student neither asks for nor receives any remuneration). Direct payment of attorneys' fees to one who is not a member of the bar would kindle concerns over unauthorized practice of law that an award to a qualified clinical program for the student's efforts would not. The latter course stands on the same ground solidly supporting lawyers and law firms billing clients for work of law-student clerks done under supervision.

who was lead counsel for appellant, $55 for one senior attorney, $40 for each of two staff attorneys or "fellows," and $15 apiece for four student interns.[15] In support of the motion, appellant submitted the director's affidavit recounting the time spent by each attorney and intern on major phases of the litigation,[16] the affidavit of the associate director of the Institute setting forth the hours devoted by a student intern and himself to negotiations with the Department on fees and preparation of the fee application,[17] and the affidavit of a partner in a local law firm attesting, on the basis of personal knowledge, to the reasonableness of the hourly rates claimed.[18]

Ruling on appellant's motion,[19] the District Court first held that he had "substantially prevailed" within the meaning of FOIA's attorneys' fee provision.[20] The court then summoned the test established by this court for governance of FOIA fee allowances,[21] and concluded that it was satisfied and that an award of fees was therefore permissible.[22] However, in a purported exercise of discretion, the court refused to grant any fees at all, on the ground that appellant's request was "enormously excessive and unreasonable," [23] and was vitiated by "shoddy documentation as to the hours worked, the unsubstantiated claim for any hourly fee of One Hundred Twenty-Five Dollars ($125) for [the Institute's director] and unprecedented and unsupportable claims for attorneys' fees for the work done by uncompensated [student interns]." [24] It is this action that we now review.

## II

The basic framework for consideration and computation of attorneys' fee awards

15. Motion for Reasonable Attorney's Fees and Litigation Expenses, *supra* note 13, J.App. 13.

16. Affidavit of Victor H. Kramer, attachment to Motion for Reasonable Attorney's Fees and Litigation Expenses, *supra* note 13, J.App. 15 [hereinafter cited as *Kramer Affidavit*].

17. Affidavit of Richard Lowe, attachment to Motion for Reasonable Attorney's Fees and Litigation Expenses, *supra* note 13, J.App. 18. Later this affiant submitted another affidavit setting forth time subsequently expended in connection with the fee litigation. See Affidavit of Richard Lowe (filed Jan. 27, 1981), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.), J.App. 183 (claiming 24 additional hours of attorney-time and approximately 29 hours of student-intern time).

18. Affidavit of Stuart J. Land, attachment to Motion for Reasonable Attorney's Fees and Litigation Expenses, *supra* note 13, J.App. 20 [hereinafter cited as *Land Affidavit*].

19. The earlier District Court action affirmed by this court, it will be recalled, was a partial summary judgment. Before ruling on the fee motion, the District Court dismissed appellant's remaining claims with prejudice. *Jordan v. United States Dep't of Justice,* 89 F.R.D. 537, 539 (D.D.C.1981); see 5 U.S.C. § 552(a)(4)(E) (1976).

20. *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 539; see 5 U.S.C. § 552(a)(4)(E) (1976), providing:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

21. *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 182 U.S.App.D.C. 83, 559 F.2d 704 (1977). We held that in exercising its discretion on application for FOIA attorneys' fees, the court must consider four factors: the public benefit served by disclosure, the commercial benefit to the complainant as a result of disclosure, the nature of the complainant's interest in the records sought, and the reasonableness of the governmentally-asserted legal basis for withholding. *Id.* at 93, 559 F.2d at 714. No single consideration, we held, should be given dispositive weight. *Id.*

22. Assessing the four factors, the District Court found that the public interest would be served by release because appellant had a "scholarly or journalistic or public interest concern." *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 540. The court further found that the commercial interest in release was slight, and that the principal purpose to be served thereby was publication of a scholarly article. *Id.* Finally, the District Court, noting this court's earlier characterization of the Department's exemption claims as "meritless" and "untenable," held that the Department was unreasonable in its asserted bases for withholding. *Id.*

23. *Id.* at 538.

24. *Id.* at 540.

was constructed in our opinion in *Copeland v. Marshall.*[25] We there adopted a market-value approach,[26] the initial step in which is calculation of the "lodestar" figure, derived by multiplying the number of hours reasonably expended by the hourly rate prevailing in the community for similar work.[27] Repeating a long-familiar formula, we said that the prevailing community rate is the product of a host of factors, including the level of skill necessary, time constraints imposed on the attorney by the litigation, the attorney's reputation, and undesirability of the case.[28] We suggested that a court might, in determining the reasonableness of the hours reported, disallow time spent in duplicative, unorganized or otherwise unproductive effort.[29] We also stated that the court might adjust the lodestar figure to reflect the risk attendant upon arrangements making compensation contingent on success in the case, value lost through delay in receipt of payment,[30] and the quality of representation furnished on behalf of the moving party.[31]

More recently, in *National Association of Concerned Veterans v. Secretary of Defense,*[32] we concentrated on the nature of the documentation required of fee claimants.[33] We declared that the court may, as a means of enforcing the applicable standards, deny a fee motion when the submission is "manifestly inadequate." [34] We expressed the hope that, in suitable circumstances, disallowance of attorneys' fees would serve as a "means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated and conscientiously measured claims." [35]

■ Total denial of requested fees as a purely prophylactic measure, however, is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like,[36] or when the application is grossly and intolerably exaggerated,[37] or manifestly filed in bad faith.[38]

**25.** 205 U.S.App.D.C. 390, 641 F.2d 880 (*en banc* 1980).

**26.** *Id.* at 401–409, 641 F.2d at 891–899.

**27.** *Id.* at 401, 641 F.2d at 891.

**28.** *Id.* at 402, 641 F.2d at 892, citing *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 96–97, 503 F.2d 177, 187–188 (1977).

**29.** *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401, 412–413, 641 F.2d at 891, 902–903.

**30.** *Id.* at 402–403, 641 F.2d at 892–893.

**31.** *Id.* at 403, 641 F.2d at 893.

**32.** 219 U.S.App.D.C. 94, 675 F.2d 1319 (1982), as amended by *National Ass'n of Concerned Veterans v. Secretary of Defense,* No. 81–1364 (D.C.Cir. July 15, 1982) (order). The opinion in *National Association* was amended subsequent to publication in the Federal Reporter. We note that fact whenever we cite a part of the opinion for which the language changed in consequence of that order.

**33.** See *id.* at 100  104, 675 F.2d at 1325–1329 (as amended).

**34.** *Id.* at 106 n.19, 675 F.2d at 1331 n.19.

**35.** *Id.,* quoting *Brown v. Stackler,* 612 F.2d 1057 (7th Cir. 1980).

**36.** See *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 106 n.19, 675 F.2d at 1331 n.19.

**37.** The facts of *Brown v. Stackler, supra* note 35, are instructive in this regard. There, counsel claimed 800 hours of billable time for work performed in connection with a "plain and simple case, which would almost automatically be disposed of by the [Supreme Court's] decision in [*Virginia Pharmacy Bd. v. Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) ] whose determination was being awaited." 612 F.2d at 1059. *Cf.* Fed.R.Civ.P. 68 (court may deny costs to plaintiff who recovers less than amount tendered in a formal offer of judgment).

**38.** *Cf. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra* note 14, 421 U.S. at 258–259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154; *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 n.4, 88 S.Ct. 964, 966 n.4, 19 L.Ed.2d 1263, 1266 n.4 (1968); *Copeland v. Martinez,* 195 U.S.App. D.C. 399, 402, 603 F.2d 981, 984 (1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980).

Quite obviously, however, the fee application and supporting documentation in the case at bar are not of this nature, and cannot be characterized as "manifestly inadequate."[39] To buttress the motion, appellant presented the affidavit of Victor H. Kramer, appellant's lead counsel in the litigation on the merits, attesting to the number of attorney and student hours expended on each phase.[40] Mr. Kramer testified in his deposition that, in arriving at the figures, he first examined the time sheets prepared by the staff attorneys and students recording the dates and hours worked, but not the specific tasks discharged.[41] He then compared those sheets with a formal case file, and in this manner reconstructed the type of work performed during the hours listed.[42] Through this process of reconstruction, Mr. Kramer established, for instance, that he had personally expended four and one-quarter hours on appellant's successful motion for partial summary judgment, while a staff attorney had given forty hours thereto.[43] Similar breakdowns and reconstructions were furnished for work associated with preparation and filing of the initial complaint, drafting of interrogatories and formulation of appellant's opposition to the Department's motion,[44] as well as with preliminary appellate motions and appellate briefs.[45] The contemporane-

**39.** See text *supra* at note 34.

**40.** See *Kramer Affidavit, supra* note 16, at ¶ 3, J.App. 15.

**41.** Deposition of Victor Kramer at 14–15, 46–48 (filed Jan. 19, 1981), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.), J.App. 73–74, 105–107 [hereinafter cited as *Kramer Deposition*].

**42.** *Id.*

**43.** See *Kramer Affidavit, supra* note 16, at ¶ 3, J.App. 16.

**44.** Total time claimed for District Court representation was as follows:

| Type of Work | Performed By | Number of Hours |
|---|---|---|
| Complaint | Rubenstein (Fellow) | 7.00 |
| | Dugan (Student) | 13.50 |
| Interrogatories | Rubenstein (Fellow) | 5.00 |
| Motion for Partial Summary Judgment | Kramer (Senior Attorney) | 4.25 |
| | Rubenstein (Fellow) | 40.50 |
| | Dugan (Student) | 37.00 |
| Opposition to Department's Motion | Kramer (Senior Attorney) | 3.50 |
| | Rubenstein (Fellow) | 27.75 |
| Preparation for Oral Argument | Kramer (Senior Attorney) | 14.50 |
| | Sello (Fellow) | 16.00 |
| Post-hearing | Kramer (Senior Attorney) | 4.25 |
| | Sello (Fellow) | 12.50 |
| Subtotal | | 185.75 |

*Id.*

**45.** Time claimed for appellate court work was as follows:

| Type of Work | Performed By | Number of Hours |
|---|---|---|
| Preliminary Motions | Sello (Fellow) | 3.00 |
| | Hill (Student) | 7.50 |
| Appellee's brief | Kramer (Senior Attorney) | 10.75 |
| | Sello (Fellow) | 79.50 |
| | Hill (Student) | 39.50 |
| Supplemental brief | Kramer (Senior Attorney) | 4.50 |
| | Karp (Student) | 39.25 |
| Preparation for Oral Argument | Kramer (Senior Attorney) | 8.50 |
| | Karp (Student) | 6.00 |
| Subtotal | | 198.50 |

*Id.* Appellant also claimed the following time for work done in connection with the fee application:

| Type of Work | Performed By | Number of Hours |
|---|---|---|
| Negotiations | Lowe (Attorney) | 10.25 |
| Preparation of Motion for Attorneys' Fees | Lowe (Attorney) | 4.00 |
| | Ismail (Student) | 21.50 |
| Subtotal | | 35.75 |

*Id.*

Mr. Kramer testified in his deposition that, until the time thereof, he had been completely unaware of the hourly rate claimed for his services. *Kramer Deposition, supra* note 41, at 91, J.App. 153. This somewhat unusual circumstance was attributable to the fact that, at the time appellant's fee application was filed, Mr. Kramer was Counselor to the Attorney General of the United States, and accordingly, insofar as providing information in support of a challenge to action by the Department of Jus-

ous timesheets utilized during this reconstruction were requested by and produced for the Department.[46]

In addition, Mr. Kramer explained that, when appropriate, he had made downward adjustments in amounts of time claimed.[47] For instance, time consumed in teaching students, as well as time expended by new attorneys and students to familiarize themselves with the pending litigation, was not included in the fee claim.[48] Hours appraised by Mr. Kramer as either duplicative or excessive were similarly excluded.[49]

Manifestly, this documentation, though perhaps less detailed than some received by the courts,[50] is not so impoverished as to warrant outright denial of any and all fees. Quite to the contrary, the submissions in support of appellant's time claims easily satisfy the standards we enunciated in *Copeland*[51] and *National Association*.[52] Though in both cases we emphasized that

fee claimants must supply detailed documentation of hours logged and tasks performed,[53] we took care to state that "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted."[54] To enable opposing counsel adequately to assess the merits of the motion, and the court to fulfill its obligations, no more is necessary than "fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, [and] associates...."[55] This standard, we hold, was here met.[56]

Complete disallowance of the fees appellant sought could not be justified by the claimed hourly rate of $125 for Mr. Kramer's services. The affidavit of Stuart J. Land, offered in support of the fee claim, asserted that the rate was actually below

tice was concerned, was placed in a very sensitive position. The Department tries to make much of this point, see Brief for Appellee at 8–9, but we believe appellant's counsel, both past and present, have handled this obviously awkward situation admirably.

**46.** See Notice of Deposition of Richard Lowe (filed Nov. 10, 1980), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.).

**47.** See *Kramer Affidavit, supra* note 16, at ¶ 4, J.App. 17; *Kramer Deposition, supra* note 41, at 55–56, 70–71, J.App. 114–117, 131–132.

**48.** *Kramer Affidavit, supra* note 16, at ¶ 4, J.App. 17.

**49.** See, *e.g., Kramer Deposition, supra* note 41, at 100–101, J.App. 161–162. Mr. Kramer testified that where he had no independent recollection of what work a particular student had performed, or where his recollection was that the time overlapped other work, he cancelled the item completely. *Id.*

**50.** *Cf. Environmental Defense Fund, Inc. v. EPA,* 217 U.S.App.D.C. 189, 201, 672 F.2d 42, 54 (1982). We cited the submission in support of the Fund's fee application with approval in our *National Association* opinion, *supra* note 32, 219 U.S.App.D.C. at 102 n.11, 675 F.2d at 1327 n.11. This was not to suggest, however, that all applications must contain the degree of specificity found there.

**51.** *Supra* note 25.

**52.** *Supra* note 32.

**53.** *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 99–104, 675 F.2d at 1324–1329 (as amended); *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401–402, 641 F.2d at 891–892.

**54.** *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 101, 675 F.2d at 1326, quoting *Copeland v. Marshall, supra* note 25, 205 U.S. App.D.C. at 401, 641 F.2d at 891; accord, *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir. 1973).

**55.** *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401, 641 F.2d at 891, quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra* note 54, 487 F.2d at 167.

**56.** While a fee claimant should indicate the nature of the work and number of hours excluded by counsel as unproductive, see *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S.App.D.C. at 102, 675 F.2d at 1327, Mr. Kramer, we have observed, stated with varying degrees of specificity that some of the spent time was discounted for this very reason. See text *supra* at notes 47–49. On remand, appellant may wish to submit further and more specific evidence in this regard.

that prevailing in the local legal community.[57] Mr. Land specifically noted that his assessment of the market rate was based on experience he had acquired in administering his firm's *pro bono* activities, including preparation of numerous fee applications and examination of fee applications presented by attorneys from other firms.[58]

This is the very kind of documentation demanded and anticipated by the *Copeland* and *National Association* standards. While fee claimants must provide the court with specific evidence of the prevailing community rate,[59] it may take the form of fee awards in other cases involving similar issues and attorneys of comparable skill and reputation,[60] or affidavits attesting to the prevailing market rate.[61] And while evidence of the latter type should recite the factual basis for the affiant's conclusion,[62] that obligation is discharged when the affiant avows that the quoted rate is based upon "personal knowledge about specific rates charged by other lawyers or rates for similar litigation."[63] There is no requirement that the affidavit "be replete with names of other attorneys or firms or otherwise filed with minute details."[64] The Land affidavit meets these criteria precisely.

We thus cannot view the hourly rate requested for Mr. Kramer's work as either outrageous or unprecedented. If, as may have been the case, it was by the District Court's assessment somewhat excessive, the proper response was a reduction of the rate by the court before calculation of the lodestar. Discretionary adjustments of this sort are frequently called for by the *Copeland* formulation.[65] We held in *Copeland* that consideration merely of the total number of hours expended on litigation will not do, but that the court must ascertain the number of hours reasonably expended, and refuse compensation for time unreasonably claimed.[66] The court also must ultimately determine, on the evidence before it, the rate prevailing in the community for similar legal work.[67] To be sure, the burden of producing evidence on that score rests upon the claimant,[68] but the final determination is the court's responsibility.[69] To decline any fee award whatsoever simply because of doubts on parts of the claim is, in any but the most severe of cases, a failure to use the discretion confided by the *Copeland* doctrine. We hold that it was improper to totally deny fees in the circumstances of this case.

**57.** *Land Affidavit, supra* note 18, at ¶ 5, J.App. 21.

**58.** *Id.* ¶ 3, J.App. 21.

**59.** *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 100–101, 675 F.2d at 1325–1326 (as amended); *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 402, 641 F.2d at 892.

**60.** *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 100 & n.7, 675 F.2d at 1325 & n.7 (as amended).

**61.** *Id.* at 100–101, 675 F.2d at 1325–1326 (as amended).

**62.** *Id.* at 100, 675 F.2d at 1325 (as amended).

**63.** *Id.*

**64.** *Id.* So despite the Department's contention to the contrary, Mr. Land's refusal during his deposition to name particular attorneys or law firms charging the claimed rates is of no import. See Brief for Appellees at 6; Deposition

of Stuart J. Land at 21 (filed Dec. 19, 1980), *Jordan v. United States Dep't of Justice,* No. 76–0276 (D.D.C.), J.App. 35.

**65.** See *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401–403, 641 F.2d at 891–893; see also *Furtado v. Bishop,* 635 F.2d 915, 923 (1st Cir. 1980); *Rainey v. Jackson State College,* 481 F.2d 347, 351 (5th Cir. 1973); *Northcross v. Board of Educ.,* 611 F.2d 624, 641 (6th Cir. 1979).

**66.** *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401–402, 641 F.2d at 891–892.

**67.** *Id.* at 402, 641 F.2d at 892.

**68.** See *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S. App.D.C. at 100–106, 675 F.2d at 1325–1331 (as amended).

**69.** See *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 401–402, 641 F.2d at 891–892.

## III

We must now address a further aspect of the fee claim that the District Court found uncompensable: compensation for supervised law-students' work on the case in a clinic.[70] While the student contributors were not paid, appellant seeks recovery of $15 per hour for their efforts.

From the District Court's memorandum opinion and the Department's argument on appeal, we glean four purported reasons for a holding that fees therefor cannot be awarded: (i) law students are not authorized to practice law, and thus are not to be entitled to attorneys' fees;[71] (ii) the Federal Government has not waived sovereign immunity with respect to awards of fees to law students;[72] (iii) the students' work should not form the basis for collection of fees because they were not paid any compensation by the clinic;[73] and (iv) calcula-

tion of fees for student endeavor presents problems of appropriate discounts for duplicative and unfruitful effort.[74]

■ The argument that law-student services cannot possibly form the basis for an attorneys' fee award merely because law students are not lawyers has only superficial vitality. It loses force drastically when one notes the commonplace use of law students by law firms—usually full-time during summer months, and part-time during the academic year—to perform tasks that otherwise would fall to full-fledged attorneys. And the argument founders completely in the tide of state statutes[75] and court rules[76] authorizing law students, under appropriate circumstances, to undertake functions of licensed attorneys, including actual representation of clients before a court.[77] This practice has been praised by

**70.** In *North Slope Borough v. Andrus,* 515 F.Supp. 961 (D.D.C.1981), the District Court made an award for student work, indicating that the critical difference was that the student lawyering there was for a public interest group. *Id.* at 964, 968. The allowance was characterized, not as fees for the students' time, but as reimbursement of "costs" of supporting the students' work. *Id.* at 966 n.25, 971–972. The students were not paid, and the costs referenced by the court included supervision, office space, and other like items. *Id.* at 971 n.40. The court nevertheless used the per-hour rate sought by the public interest group in its fee request, and adjusted the hours claimed in accordance with its judgment of the number compensable. See *id.* at 966. The result was an award at an hourly rate 67% higher than that refused in this case, for a total amount nearly three times greater. Compare *id.* at 971 with Brief for Appellants at 8.

We deem the asserted distinction between a legal service in a law-school clinical program and legal service for a public interest group unimportant for purposes of determining the propriety of an attorneys' fee award for law-student work and treatment of such work as a "cost" a needless technique. It is hardly a cost when it is free, and, in any event, legal service by law students differs significantly from paralegal service, for which the District Court has countenanced an itemized recovery as costs. *Bachman v. Pertschuk,* 23 Fair Empl. Prac.Cas. (BNA) 1046, 1054 (D.D.C.1979). See *Lamphere v. Brown Univ.,* 610 F.2d 46, 48 & n.3 (1st Cir. 1979) (such costs might more properly be considered part of the overhead expenses included in the hourly rate of attor-

neys). See generally Comment, *Court Awarded Attorneys' Fees in Recognition of Student Lawyering,* 130 U.Pa.L.Rev. 161, 164 (1981) (discussing student role in clinical programs). Thus, although the result in *North Slope* accords with what we find proper here, we cannot accept its reasoning.

**71.** *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 541; Brief for Appellees at 26.

**72.** *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 541; Brief for Appellees at 26–27.

**73.** *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 541; Brief for Appellees at 28–31.

**74.** Brief for Appellees at 29–31.

**75.** *E.g.,* Ga.Code Ann. §§ 9–401.1–.2 (1973 & Supp.1981). Court appearances by certified students are permitted in the vast majority of states. Comment, *supra* note 70, at 165.

**76.** Student appearances have been authorized by at least two dozen federal district courts and four federal courts of appeals, Comment, *supra* note 70, at 165, including this court, see D.C. Cir.R. 20.

**77.** Comment, *supra* note 70, at 175 (discussing requirements in various jurisdictions); D.C. Cir.R. 20 (outlining requirements of this court).

members of the judiciary [78] and encouraged by the Judicial Conference of the United States,[79] and we have ample reason to extend our commendation.[80] Absent direction from Congress, which we do not have,[81] we cannot condone a concept of attorneys' fees so narrow as to exclude the work of law students simply because they are not yet members of the bar. Indeed, we would encounter difficulty in attempting to square a holding to that effect with our previous rulings countenancing awards of attorneys' fees, under the very statute implicated here, to *pro se* litigants for their own lay efforts.[82]

■ The District Court asserted,[83] however, and the Department continues to urge,[84] that awards of fees for student legal services are precluded by lack of a waiver of sovereign immunity with respect thereto. This argument begs the very question at issue. If student work is within the compass of a statutory provision authorizing allowance of attorneys' fees, then passage of the statutes relinquished sovereign immunity; if student work cannot be factored into an attorneys' fee award under such a statute, the portion of the claim predicated upon that work fails, irrespective of sovereign immunity, because there is no basis for assessing a fee therefor against a litigant.[85] Our view that the term "attorneys' fees" in FOIA's fee-award provision[86] is broad enough to include law-student services[87] leads us to conclude that sovereign immunity is not a problem when fees are sought from a federal agency.

■ The Department further contends that a fee award cannot appropriately extend to law-student work because the students themselves have not received any compensation. Restated, the notion underlying this position seems to be that even if fees attributable to law-student work are theoretically acceptable, any award therefor should be zero because the students are unpaid.[88] That thesis unmistakably is foreclosed by *Copeland*'s direction that fee allowances are basically to be measured by the market value of the services rendered,[89]

**78.** *E.g., Argersinger v. Hamlin,* 407 U.S. 25, 40–41, 92 S.Ct. 2006, 2015–2016, 32 L.Ed.2d 530, 540 (1972) (Brennan, J., concurring).

**79.** Administrative Office of the United States, Report of the Judicial Conference of the United States 80–81 (1971).

**80.** As judges we are thoroughly familiar with the splendid capabilities of recent law graduates, and the important contributions they make to the judicial process.

**81.** See H.R.Rep. No. 876, 93d Cong., 2d Sess. 6–7 (1974); S.Rep. No. 854, 93d Cong., 2d Sess. 17–20 (1974).

**82.** *Crooker v. United States Dep't of the Treasury,* 213 U.S.App.D.C. 376, 377, 663 F.2d 140, 141 (1980); *Holly v. Chasen,* 186 U.S.App.D.C. 329, 569 F.2d 160 (1977), *aff'g sub nom. without opinion Holly v. Acree,* 72 F.R.D. 115 (D.D. C.1976). See also *Cox v. United States Dep't of Justice,* 195 U.S.App.D.C. 189, 193–194, 601 F.2d 1, 5–6 (1979).

**83.** *Jordan v. United States Dep't of Justice, supra* note 19, 89 F.R.D. at 541.

**84.** Brief for Appellees at 26–27.

**85.** The "American rule" on attorneys' fees is that fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 478 (1967). More recently, the Supreme Court declared that "such awards ... if allowable at all, must be expressly provided for by statute...." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra* note 14, 421 U.S. at 267–268, 95 S.Ct. at 1626, 44 L.Ed.2d at 159. This is true for all litigants, whereas, of course, the sovereign immunity analysis would obtain only with respect to governmental parties.

**86.** See note 20 *supra.*

**87.** See text *supra* at notes 75–82.

**88.** *Cf.* Brief for Appellees at 12, 31 (suggesting, as to the fee request as a whole, that the District Court did not deny fees, but rather awarded a fee of zero dollars).

**89.** *Copeland* arose under other legislation, but its reasoning applies more broadly, *National Treasury Employees Union v. United States Dep't of the Treasury, supra* note 14, 211 U.S. App.D.C. at 261 n.19, 656 F.2d at 850 n.19, and the *Copeland* fee-setting formula has been employed in very different contexts, *National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S.App.D.C. at 98 n.2, 675 F.2d at 1323 n.2; *Environmental*

not the amount actually received by the attorney nor the amount that would have been received absent an award of fees.[90] This holding was grounded in part on realization that public-interest attorneys often charge their clients a smaller or even nominal sum gauged by ability to pay rather than service value, and recognition that policy considerations dictate that the awarded fees instead be calibrated to true market value.[91] That methodology has been reaffirmed on other occasions,[92] and, as we have said, it disposes of the controversy here. Fees for student legal work, if otherwise properly allowable, should represent the market value of their services, not the sum the client may pay to the clinic as a fee, nor the amount the clinic may pay to the students as compensation.[93]

■ One last argument against award of fees for law-student service remains. It is suggested that duplication of effort and time wasted on unfruitful work necessarily occur in a law-school clinic, with its periodically changing student population and its by-definition inexperienced workers. We perceive no need to call for proof of that assertion. Surely it cannot be said that the work of the students never benefits the case at all. If the assumed difficulty simply is that every hour spent by a student cannot be charged against the opposing litigant, it hardly differs from a problem not foreign to fully-licensed attorneys,[94] and one appreciated by the attorneys in charge of the clinical programs here.[95] We are mindful of the need for care in developing a fair claim founded on the work of students, but in other contexts the courts have coped adequately with contentions that activity for which fees are requested is unmeritorious for one reason or another, and we do not view the possibility of similar protests in the clinical setting as an insurmountable obstacle to reasonable fee awards.

Finding all of the rationales relied upon by the District Court or advanced by the Department to be unavailing, we discern no reason why FOIA's statutory authorization of attorneys' fee awards should not encompass student work in law school clinics. Indeed, such allowances may promote the availability of lower-cost representation, with salutary effects on the burden of fee awards, on statutory efforts to remove barriers to litigation of meritorious claims,[96] and on the market forces encouraging settlement in appropriate cases,[97] as well as on the quality of legal education.[98] Absent fee awards at market rates, the party opposing a litigant represented by a clinical program might have an incentive to litigate a case that would otherwise be settled.

*Defense Fund, Inc. v. EPA, supra* note 50, 217 U.S.App.D.C. at 198–199, 672 F.2d at 51–52; *National Treasury Employees Union v. United States Dep't of the Treasury, supra* note 14, 211 U.S.App.D.C. at 261, 656 F.2d at 850.

90. *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 406–410, 641 F.2d at 896–900; see generally *id.* at 399–404, 641 F.2d at 889–894.

91. *Id.* at 399–400, 641 F.2d at 889–890.

92. See note 89 *supra.*

93. This assumes, of course, that the clinic is appropriately organized to receive fees. See note 14 *supra.* Clinical programs are costly to operate, and absent fee awards law schools might for budgetary reasons limit their availability. Comment, *supra* note 70, at 163 & n.11, 176.

94. *E.g., National Ass'n of Concerned Veterans v. Secretary of Defense, supra* note 32, 219 U.S.App.D.C. at 112, 675 F.2d at 1337; *Envi-*

*ronmental Defense Fund, Inc. v. EPA, supra* note 50, 217 U.S.App.D.C. at 202–204, 672 F.2d at 55–57; *Alabama Power Co. v. Gorsuch,* 217 U.S.App.D.C. 148, 151–152, 672 F.2d 1, 4–5 (1982).

95. See note 48 *supra* and accompanying text. Of course, just as is true in the case of attorneys with differing degrees of experience in a law firm, the fact that an inexperienced student may be less productive than a knowledgeable attorney will be reflected in the per-hour rate requested.

96. See *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 399, 641 F.2d at 889; *Nationwide Bldg. Maintenance, Inc. v. Sampson, supra* note 21, 182 U.S.App.D.C. at 90–91, 559 F.2d at 711–712.

97. See *Copeland v. Marshall, supra* note 25, 205 U.S.App.D.C. at 399, 641 F.2d at 899.

98. Comment, *supra* note 70, at 161.

## IV

The order appealed from is reversed, and the case is remanded to the District Court for further proceedings. On remand, the court will review the reasonableness of the requested hourly rates in light of the market rates prevailing at the time of the litigation, assess the adequacy of the documentation supporting appellant's fee claim in light of the standards explicated in *National Association,* make appropriate adjustments to the rates sought and hours logged, and apply the *Copeland* factors and methodology in fashioning a reasonable attorneys' fee award in appellant's favor.

*So ordered.*