**IMPRO PRODUCTS, INC., Plaintiff,**

v.

**John R. BLOCK, Secretary of Agriculture, Defendant.**

**Civ. A. No. 81–1284.**

United States District Court, District of Columbia.

Aug. 12, 1983.

Harold M. Carter, George T. Qualley, Philip C. Jones, Linda A. Lipsen, Qualley, Larson & Jones, Washington, D.C., for plaintiff.

John H.E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

Before the Court is plaintiff's application for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA" or "Act"), as codified in 28 U.S.C. § 2412. Defendant has opposed, asserting that (1) plaintiff is not entitled to fees and expenses for any activity occurring prior to the effective date of the Act—October 1, 1981, (2) this action sounds in tort and is thereby excluded from the Act's coverage, (3) the position of the United States in litigation was substantially justified, (4) the special circumstances of this case render an award of fees unjust, (5) the defendant agency did not act in bad faith, and (6) plaintiff should receive compensation, if at all, only for a fraction of the legal time and effort claimed, inasmuch as plaintiff did not prevail on every issue and much of the legal work was redundant, unnecessary and wasteful.

Because we have been thoroughly briefed by both sides on all the issues presented, plaintiff's attorneys have submitted a detailed accounting of their legal work performed in this case, and defendant has had an opportunity to inspect and comment on counsel's actual billing records, a hearing is not necessary to evaluate, fairly and adequately, plaintiff's application and the government's objections thereto.

For the reasons set forth below, we do not agree with defendant's objections, and will, therefore, grant plaintiff's request for reimbursement under the EAJA. We have, however, culled plaintiff's request of time spent on unnecessary, irrelevant or redundant legal work. We have also adjusted the requested hourly rates in accordance with the guidelines provided in the Act.

## I. BACKGROUND

Plaintiff, the manufacturer of an animal biologic called "Whey Antibody Blend" ("Whey Blend"), commenced this action on June 4, 1981.[1] Plaintiff alleged, *inter alia,* that (1) a scientific test conducted on Whey Blend by defendant's Animal Research Service ("ARS") at Beltsville, Maryland, in 1966–67, was unreliable and fallacious, and (2) an article authored by ARS scientists purporting to describe the test and its findings, first published in the August, 1970, issue of the American Journal of Veterinary Research ("Journal Article"), and thereafter circulated up to the date of the complaint, was false, misleading and caused a deprivation of plaintiff's rights secured by the Fifth Amendment to the Constitution. Asserting a right to relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.,* as well as the Fifth Amendment, plaintiff sought (1) a declaration that the test was faulty and invalid, and that the Journal Article was false, deceptive and inaccurate, and (2) an injunction prohibiting further "distribution of, and reliance upon, the test and the article . . . regarding the test." Complaint, Prayer for Relief at ¶ 2.

Defendant filed an answer on September 24, 1981, in which he denied the material allegations listed above and asserted five affirmative defenses, *viz.,* (1) failure to state a claim upon which relief can be granted, (2) laches, (3) lack of standing, (4) non-justiciability, and (5) unclean hands. Defendant also asserted two counterclaims against plaintiff. Taken together they sought a declaration that the sale and distribution of plaintiff's product in interstate commerce, without a license, was in violation of the Virus, Serum and Toxin Act of 1913 ("VST Act"), 21 U.S.C. §§ 151–58.

By separate rulings dated April 7, May 5, June 25 and July 9, 1982, we rejected the five defenses asserted and dismissed the counterclaims as improperly brought.

The case was thereafter tried before the Court on July 12–16, 1982. On July 28, 1982 we ruled that it was within the discretion of the defendant whether and how to conduct the Beltsville test, and that the

---

1. Plaintiff filed an amended complaint, as of right, on September 21, 1981, which did not alter the claims for relief.

scientific validity of it was not subject to judicial scrutiny. Thus, the only issue left to be decided was whether the Journal Article accurately reflected the conduct and the results of the test.

By Memorandum and Order dated September 2, 1982, we concluded that the Journal Article did contain several false and misleading statements, and that defendant's release of the article in that form to laymen was arbitrary, capricious and an abuse of discretion. Accordingly, we issued a permanent injunction prohibiting further release of the Journal Article absent editorial amendment to correct the deficiencies.

Plaintiff thereafter filed the instant application for fees and expenses.

## II. DISCUSSION

### A. Entitlement to Award Under the EAJA

The EAJA authorizes an award of attorney's fees and reasonable expenses to an eligible private litigant[2] who prevails in a case brought by or against the United States, its officers or agencies, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In addition, the Act provides that a Court has discretion to award reasonable fees and ex-

2. The Act, aimed primarily at assisting small businesses and private individuals in their challenges to unreasonable governmental conduct, contains financial eligibility criteria. 28 U.S.C. § 2412(d)(2)(B). Plaintiff meets those criteria. See Affidavit of Mary Collins attached to Plaintiff's Application for Fees.

3. The so-called "American Rule" that each litigant must pay his own lawyer, see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), has only two judicially recognized exceptions: (1) attorneys' fees may be awarded against a losing party who acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," F.D. Rich Co. v. Industrial Lumber Co., Inc., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974), and (2) when an individual litigant, by successfully maintaining a suit, has conferred a benefit on a group of persons the Court may allow him to recover his attorneys' fees from the beneficiaries, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392–97, 90 S.Ct.

penses against the United States "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b).[3]

There is no doubt that plaintiff is a "prevailing party" within the meaning of the EAJA. In our September 2, 1982, ruling we granted plaintiff most of the relief requested in the complaint. Defendant has, however, raised several other objections to plaintiff's application for fees and expenses. We will treat those arguments seriatum.[4]

### 1. "Position of the United States"/"Substantially justified"

■ Fees and expenses are not awardable under the EAJA if the "position of the United States" (here the Secretary of Agriculture) was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Under the law of this Circuit, the position referred to is the posture assumed by the government in litigation.[5] Spencer v. NLRB, 712 F.2d 539, 556 (D.C.Cir.1983). A litigation position is substantially justified if it has slightly more than a reasonable basis both in law and fact. Id. at 557; see H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11 (1980), U.S.Code Cong. & Admin.News 1980, p. 4953; S.Rep. No. 253, 96th Cong., 1st Sess. 6–7 (1979). The governmental defendant bears the burden of proof on this issue. Spencer, supra at 557.

616, 625–628, 24 L.Ed.2d 593 (1970). Spencer v. NLRB, 712 F.2d 539 (D.C.Cir.1983).

4. We reject out of hand defendant's initial contention that this action "sounds in tort" and, therefore, fees are not awardable under the EAJA. See 28 U.S.C. § 2412(d)(1)(A). This action was plainly grounded in the APA, not the general common law of torts. While it may be true that defendant's conduct was tortious, the avenue of relief pursued by plaintiff is the generally recognized basis for challenging the activities of federal agencies. As such, plaintiff is not precluded from seeking reimbursement for its legal expenses.

5. There is a significant split of authority on the meaning to be given "position." The term has been held to refer to the governmental action that precipitated the lawsuit, rather than the litigation position of the federal defendant. Natural Resources Defense Council, Inc. v. EPA, et al., 703 F.2d 700 (3d Cir.1983); Spencer, 712 F.2d at 546 n. 27 (D.C.Cir.1983).

■ Defendant's primary contention is that his position in this lawsuit was substantially justified. That position has two elements. First, defendant asserted in his motion to dismiss that the Beltsville test and the Journal Article was unreviewable discretionary activities. According to the Secretary, since he had a reasonable basis in law and fact to maintain this argument, which would have been a complete defense to plaintiff's claims if it had been accepted by the Court, his position was substantially justified.

The second prong of defendant's litigation position was advanced at the hearing and in post-hearing briefs. He contended that there were no defects in the Journal Article, and, alternatively, to the extent any defects could be found, they were not the result of negligent or arbitrary conduct, but were, instead, mere errors in editorial judgment. Defendant asserts that this defense was reasonably supported by the facts of the case and, therefore, this position was also substantially justified.

On two occasions prior to our final judgment in this action, we considered and rejected defendant's claim that publication and dissemination of the Journal Article was not subject to judicial review.[6] *See Impro Products, Inc. v. Block,* C.A. No. 81–1284 (D.D.C. July 9, 1982), *further disposition* (D.D.C. July 28, 1982). Defendant argued that release of the test results was "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We found, however, that (1) the APA creates a strong presumption that agency action is subject to judicial review, *Impro Products,* slip op. at 3 (D.D.C. July 28, 1982); *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1043 (D.D.Cir.1979), and (2) this was not one of those rare instances where the governing statute is drawn in such broad terms that there is no law to apply. *Impro Products, supra* at 4–6; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820–821, 28 L.Ed.2d 136 (1971). We now conclude, therefore, that defendant was not substantially justified in arguing to this Court that he had unbridled discretion in the release of test results that were, at the least, inaccurate and incomplete.[7]

Defendant's position as to the reliability of the Journal Article was similarly lacking in substantial justification. The evidence adduced at the July, 1982 hearing clearly showed that the report of the test results contained several misstatements of fact and was, therefore, misleading and deceptive. We concluded that defendant's release of the Journal Article to laymen, i.e. non-veterinarians, was arbitrary and capricious conduct amounting to an abuse of discretion. By the weight of the evidence, defendant had no reasonable basis in fact to assert that the Journal Article was totally reliable and accurate, or that mere editorial errors were the only defects.

In light of the above, we conclude that the litigation position of the governmental defendant as to the publication of the Journal Article was not substantially justified. We turn now to consider whether some special circumstances exist that would otherwise make an award of fees unjust.

### 2. Special Circumstances

Defendant asserts that, pursuant to the terms of the EAJA, fees are not awardable in this case because special circumstances exist that would make an award unjust. These special circumstances allegedly include (1) the novelty of the legal issues attending this litigation, and (2) plaintiff's "unclean hands." We do not agree.

First, it is clear from the discussion above that this case did not involve truly unique issues of law and/or fact. Rather, plaintiff presented a fairly standard claim for judicial review of federal agency conduct. We found the controlling case law to be well-

---

**6.** We did, however, agree with defendant that the conduct of the Beltsville test itself was not reviewable.

**7.** Moreover, defendant did not raise his legal objections to judicial review until one year after this lawsuit had begun. *See* Defendant's Motion to Dismiss, filed June 10, 1982. At that time, virtually all of the discovery had taken place and this matter was at the brink of trial. We can see no justification for this dilatory litigation tactic.

settled, and the significant open issues were resolved through traditional means of statutory construction. Moreover, defendant belies his own position by arguing, on another point, that plaintiff's counsel do not merit premium compensation because this case was not difficult or extraordinary, and it did not require special legal skill.

Defendant's second argument is that plaintiff has "unclean hands" because it has violated the VST Act by selling and distributing Whey Blend in interstate commerce without a license. In our April 7 and June 25, 1982 rulings, we refused to allow defendant to gather or present evidence on that issue:

> Absent evidence of Congressional intent, we decline to create a new enforcement mechanism ... The Government has made no attempt to institute criminal proceedings against the plaintiff for the alleged licensing violations. Hence, we are unwilling to permit the Government to use a civil injunction action to enforce a criminal statute.

*Impro Products,* C.A. No. 81–1284, slip op. at 7–8 (D.D.C. April 7, 1982). Further, we concluded that:

> [T]o uphold the Fifth Defense ("unclean hands") we would be required to rule, in this *civil* action that the marketing of plaintiff's products are subject to the VST Act, and that plaintiff is in violation of that *criminal* statute. To do so, where plaintiff has never been indicted or convicted in a criminal proceeding under the VST would jeopardize plaintiff's constitutional rights.

*Impro Products, supra,* slip op. at 2 (D.D.C. June 25, 1982).

Throughout this litigation plaintiff has steadfastly maintained that its products are not subject to the VST Act. To uphold defendant's "unclean hands" argument in the present context, we would necessarily have to rule that plaintiff's products *are* subject to the VST Act, and that plaintiff

has violated that Act. This would also undoubtedly "jeopardize plaintiff's constitutional rights." We once again decline to do so.

Accordingly, we find no special circumstances present in this case which would render an award of attorneys' fees and expenses unjust.

### 3. *Bad Faith*

■ Plaintiff also claims entitlement to an award of fees under 28 U.S.C. § 2412(b), asserting that defendant acted in bad faith throughout the 18-year history of this dispute carried on in the Department of Agriculture, in the Congress and in the Courts. In essence, plaintiff asserts that the ARS scientists consciously tried to ruin plaintiff's business by publishing and disseminating the Journal Article, even though they knew it to be false, misleading and deceptive. Defendant, of course, disclaims any hint of malice and attributes the faulty report to excusable neglect.

On the evidence before us we cannot make a finding that the Federal employees acted with malice and in bad faith. Although both parties exhibited unusual tenacity and at times hostility in the long course of their dealings, we do not equate tenacity with bad faith.

In sum, we find that, although defendant is not guilty of bad faith, plaintiff is a prevailing party that is entitled to an award of attorneys' fees and reasonable expenses under the EAJA because the position of the federal defendant was not substantially justified, and there are no special circumstances that would render an award unjust.

We turn now to an analysis of the actual hours and fees claimed in order to calculate the appropriate amount of award.

### B. *Calculation of Award* [8]

■ Computation of awardable fees under a federal fee-shifting statute must

---

**8.** Defendant first contends that plaintiff is not to be compensated for any fees and expenses incurred prior to the effective date of the EAJA, that is October 1, 1981. This argument, however, ignores the plain language of the statute, *see* Pub.L. No. 96–481, § 208, 94 Stat. 2330

(1980), and the cases decided thereunder. *Natural Resources Defense Council,* 703 F.2d at 713; *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 77 (4th Cir.1982); *Gava v. U.S.,* 699 F.2d 1367 (Fed.Cir.1983). Since this civil ac-

begin with the "lodestar" figure, the number of hours reasonably expended by claimant's counsel multiplied by the appropriate hourly rate. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc); *Jordan v. United States Dept. of Justice,* 691 F.2d 514, 518 (D.C.Cir.1982); *see Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Time spent in duplicative, unorganized or otherwise unproductive and/or unnecessary work should be disallowed. *Id.* A court must insure that adequate "billing judgment" has been exercised by counsel and is reflected in the fee request. *Id.*

■ The fee request itself must be well-documented. Fee claimants must supply a detailed accounting of hours logged and tasks performed, yet, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted." *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1326 (D.C.Cir.1982), quoting *Copeland,* 641 F.2d at 891; *accord Jordan,* 691 F.2d at 520. Moreover, "no more is necessary than 'fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, [and] associates....'" *Jordan,* 691 F.2d at 520 (footnote omitted), quoting *Copeland,* 641 F.2d at 891.

■ At the outset, we find that plaintiff has sufficiently documented its fee request. Counsel for plaintiff submitted a detailed accounting, broken down by month, day, and attorney, of the hours expended, amplified by a brief description of the activities performed for each time entry. Each attorney involved with the case filed an affidavit attesting to the accuracy of the entries for his or her work. Finally, plaintiff submitted a similarly detailed accounting of the time and activities *excluded from* the fee request, *viz.,* all the work done by paralegals and law clerks. These documents clearly meet the standards set out in *Copeland* and *National Association.*

We turn then to an analysis of the reasonableness of the hours claimed, as well as the requested hourly rates.

### 1. *Compensable Hours*

Defendant rightly points out that plaintiff claims compensation for "a lot of hours, *viz.,* 3,568.25."[9] Nonetheless, we find that the overwhelming majority of billable hours claimed were reasonably expended in light of (1) the nature of the proceedings, and (2) defendant's conduct in litigation.

Relying on the recent Supreme Court decision in *Hensley v. Eckerhart, supra,* the Secretary initially contends that plaintiff is not to be compensated for hours spent litigating an unsuccessful claim, namely plaintiff's challenge to the validity and conduct of the Beltsville test itself. Plaintiff counters, and we agree, however, that the Beltsville test and the resulting Journal Article were interrelated activities, such that discovery as to the facts and circumstances surrounding conduct of the test was necessary to discern the accuracy of the Journal Article.

In *Hensley* the Supreme Court held that: Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours

---

tion was pending on October 1, 1981, plaintiff is entitled to an award of fees and expenses for legal work done prior to that date. *Id.*

**9.** The breakdown of hours is as follows:

| Attorney | Hours |
|---|---|
| Partners: | |
| Harold M. Carter (HMC) | 1,269.25 |
| George T. Qualley (GTQ) | 868.25 |
| Phil C. Jones (PCJ) | 637.00 |

| Attorney | Hours |
|---|---|
| Associates: | |
| Linda A. Lipsen (LAL) | 67.50 |
| Paul A. Sortland (PAS) | 75.00 |
| Thomas R. Olson (TRO) | 99.50 |
| Todd W. Gunderson (TWG) | 25.75 |
| Harry L. Capadano (HAC) | 11.75 |
| Richard E. Keithley (REK) | 9.50 |
| Robert J. Wise (RJW) | 3.75 |
| James P. Barone (JPB) | 1.00 |
| Total | 3,568.25 |

spent on the unsuccessful claim shall be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised.

—— U.S. at ——, 103 S.Ct. at 1943. Here, there can be no doubt that plaintiff's claims were related. In order to prove that the Journal Article inaccurately reported the methodology used and the results obtained from the Beltsville test, plaintiff necessarily had to show what, in fact, occurred during that test. That we did not determine whether the test was scientifically valid does not mean that the facts and circumstances underlying the project were irrelevant or superfluous. To the contrary, those matters were crucial to our finding that the Journal Article was defective.

Furthermore, plaintiff sought a two-pronged declaratory judgment: (1) that the test was faulty and invalid, and (2) that the Journal Article was false, misleading and deceptive. Plaintiff also requested an injunction prohibiting further dissemination of the Journal Article. We found the Journal Article to be misleading and we granted the injunctive relief sought. This was a substantial portion of the total relief requested.

Because plaintiff's claims were interrelated and plaintiff succeeded in obtaining substantial relief, we conclude that the claims are not sufficiently fractionable to warrant a reduction in the number of compensable fee hours.

Turning to the fee request, defendant objects to more than 80% of the hours claimed for, *inter alia,* preparation of the complaint, motions, hearing and post-hearing matters, as being redundant, unnecessary and wasteful. We do not agree.

First, we consider the time spent in preparation of the complaint to be reasonable given the tattered history of this dispute and the detailed factual and scientific background necessary for supporting plaintiff's claims. As to the time spent litigating motions, we note that defendant's litigation conduct was the root cause of that effort. Discovery in this action proceeded with little or no cooperation from defendant. Moreover, defendant attempted to use its ultimately unsuccessful counterclaims as a basis for a far-reaching investigation of all plaintiff's business activities. Consequently, plaintiff was required to seek protective orders and to compel defendant to produce documents, witnesses for depositions and answers to interrogatories. This time was, therefore, required and reasonably expended in response to defendant's tactics.[10]

Defendant also objects to the breadth of plaintiff's discovery, asserting that only a limited amount of information concerning the Beltsville test and the Journal Article was necessary for plaintiff to succeed. But the Secretary overlooks his own answer to the complaint. In that document he asserted five affirmative defenses and two counterclaims. With one exception, each defense and both counterclaims were ultimately rejected. To bring about those rejections, plaintiff was required to indulge in extensive discovery, and we find that its zeal in conducting such discovery was warranted.[11]

There are, nevertheless, some areas where plaintiff's request needs adjustment. First, plaintiff concedes that 14 hours of attorney time were erroneously included in the fee request. Second, we find that the

---

**10.** We note that nearly all of plaintiff's motions were granted, including the motion to dismiss defendant's counterclaims.

**11.** It is true that some of plaintiff's discovery can be deemed unnecessary, since we ultimately ruled that the scientific validity of the Beltsville test was not subject to judicial review. Defendant did not raise this point, however, until long after plaintiff had completed virtually all of its discovery. Thus, it was defendant's own dilatory litigation conduct that allowed plaintiff to implement broad discovery measures.

We also find that the time expended in post-hearing matters and on the instant application was reasonable under the circumstances of this case. We requested several rounds of detailed briefs, as well as proposed findings, in order to facilitate our review. Counsel's hours were, therefore, well spent.

following items claim hours that were redundant and/or unnecessary:

| Date | Attorney | Hours |
|------|----------|-------|
| 4–27–81 | HMC | 6.0 |
| 5–11–81 | PCJ | 1.0 |
| 10–2–81 | PAS | 1.25 |
| 10–10–81 | PAS | .75 |
| 11–10–81 | GTQ | 2.0 |
| 12–16–81 | HMC | 1.0 |
| 1–22–82 | PAS | 2.0 |
| 3–4–82 | LAL | 1.0 |
| 3–12–82 | LAL | 1.0 |
| 4–6–82 | GTQ | 6.0 |
| 4–30–82 | LAL | 1.0 |
| 5–5–82 | TWG | 3.5 |
| 5–21–82 | HMC | 6.0 |
| 6–17–82 | LAL | 4.0 |
| 6–25–82 | TRO | .25 |
| 6–25–82 | GTQ | 7.0 |
| 6–25–82 | PCJ | 6.0 |
| 7–12–82 | LAL | 11.0 |
| 7–12–82 | HMC | 7.0 |
| 7–13–82 | LAL | 12.0 |
| 7–14–82 | HMC | 8.0 |
| 7–14–82 | LAL | 8.0 |
| 7–15–82 | HMC | 6.0 |
| 7–15–82 | LAL | 8.5 |
| 9–8–82 | HMC | 1.0 |
| 11–24–82 | LAL | 2.5 |
| 12–9–82 | LAL | 2.5 |
| 12–10–82 | LAL | 1.0 |
| | Total | 117.25 |

Included in the above is the time spent by two of plaintiffs' attorneys at trial. Four lawyers were at the counsel table; only two actively participated. We deduct the fees of the inactive counsel.

Finally, we deduct 30 hours, 10 each from Carter, Qualley and Jones, to account for non-productive travel time. That figure represents one-half of the total travel time claimed. *See McPherson v. School District # 186,* 465 F.Supp. 749, 758 (S.D.Ill.1978); *Keyes v. School District No. 1, Denver, Colo.,* 439 F.Supp. 393, 409 (D.Colo.1977).

Incorporating the above-listed adjustments, we find that the following hours claimed by plaintiff's attorneys are compensable:

| Attorney | Hours |
|----------|-------|
| **Partners:** | |
| HMC | 1,215.25 |
| GTQ | 838.25 |
| PCJ | 620.00 |
| **Associates:** | |
| LAL | 515.00 |
| PAS | 71.00 |
| TRO | 99.25 |
| TWG | 22.25 |
| HLC | 11.75 |
| REK | 9.50 |
| RJW | 3.75 |
| JPB | 1.00 |
| Total | 3,407.00 |

### 2. Hourly Rates

Plaintiff claims hourly rates for its attorneys ranging from $23.06 to $150.00. Under the EAJA, however, the maximum awardable rate is $75.00 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

Plaintiff contends that its attorneys were especially qualified because of their long and continuous relationship with the underlying dispute. In addition, plaintiff claims an upward adjustment of 10.7% in the maximum rate for an increase in the cost of living during 1981–1982. *See Price Index— All Urban Consumer,* U.S. Dept. of Labor, Bureau of Labor Statistics, Washington, D.C., April 22, 1983.

We do not agree that a significantly developed lawyer-client relationship, without more, is the touchstone for exceeding the EAJA's maximum fee rate. The Act contemplates situations involving exceptional legal expertise not regularly required for litigation with the government. As pointed out in the previous section, we did not find this to be such a case. Thus, we will not award more than the statutory maximum, except for an adjustment to account for an increase in the cost of living. *See Natural Resources Defense Council,* 703 F.2d at 713. The maximum rate we will allow, therefore, is $83.00 per hour.[12]

**12.** That is the $75.00 rate increased by 10.7%. We have rounded all hourly rates to the nearest dollar.

Based upon the affidavits submitted by counsel, we find that Carter, Qualley and Jones, whose regular billing rates are $150.00, $150.00 and $100.00 per hour, respectively, are entitled to be compensated at $83.00 per hour. They are all partners in the firm of Qualley, Larson & Jones who have significant federal litigation experience. Defendant does not dispute that the statutory maximum rate is reasonable for these attorneys.

As for the associates who worked on this case, we find the hourly rates requested for them to be eminently reasonable in light of their training and experience. Once again, defendant did not object to these figures.

Accordingly, we conclude that plaintiff is entitled to receive compensation for attorneys' fees in the amount of $244,300.50, broken down as follows:

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Partners: | | | |
| HMC | 1,215.25 | $83.00 | $100,865.75 |
| GTQ | 838.25 | 83.00 | 69,574.75 |
| PCJ | 620.00 | 83.00 | 51,460.00 |
| Associates: | | | |
| LAL | 404.25 | 23.00 | 9,297.75 |
| | 110.75 | 40.00 | 4,430.00 |
| PAS | 70.00 | 57.00 | 3,990.00 |
| | 1.00 | 60.00 | 60.00 |
| TRO | 99.25 | 27.00 | 2,679.75 |
| TWG | 22.25 | 30.00 | 667.50 |
| HLC | 11.75 | 50.00 | 587.50 |
| REK | 9.50 | 45.00 | 427.50 |
| RJW | 3.75 | 60.00 | 225.00 |
| JPB | 1.00 | 35.00 | 35.00 |
| Total | 3,407 | | $244,300.50 |

3. *Expert Witness Fees and Expenses*

The EAJA specifically authorizes an award for "reasonable expenses of expert witnesses." 28 U.S.C. § 2412(d)(2)(A). Plaintiff employed two expert witnesses for testimony at trial and consultation in connection with this case, Dr. Warren Dennis and Mr. Phillip Derse. They submitted affidavits attesting to the fees and expenses charged to plaintiff, a total of $3,509.94. Defendant has not objected to this amount as being unreasonable or in excess of the highest rate paid by the government for its expert witnesses. *See* 28 U.S.C.

§ 2412(d)(2)(A)(i). Thus, we award plaintiff the full amount requested.

### III. CONCLUSION AND ORDER

Plaintiff prevailed in this action on September 2, 1982. Defendant has not shown that his litigation position was substantially justified. Nor has defendant shown that special circumstances exist which would make an award of fees unjust. We have parsed plaintiff's requested award of unnecessary and/or redundant hours, and we have adjusted the requested hourly rates to meet the strictures of the EAJA. As a result, we find that plaintiff is entitled to receive compensation from defendant in the amount of $244,300.50 for reasonable attorneys' fees, as well as $3,508.94 for the fees and expenses of expert witnesses.

It is, therefore, this 12th day of August, 1983

ORDERED that plaintiff's application for attorneys' fees and expenses under the Equal Access to Justice Act be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that the United States shall pay to plaintiff the sum of $244,300.50 as attorneys' fees; and it is

FURTHER ORDERED that the United States shall also pay to plaintiff the sum of $3,508.94 as compensation for the reasonable expenses of expert witnesses.